IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MERRITT BICHEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:23-cv-00804-BP |
| | § | |
| KENNEDALE INDEPENDENT | § | (Consolidated with Civil Action No. 4:23- |
| SCHOOL DISTRICT, *et al.*, | § | 00886-BP) |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant Kennedale Independent School District's ("KISD's") Motion to Dismiss Plaintiff's Complaint and supporting brief, filed August 28, 2023 (ECF Nos. 9, 10); Plaintiff Merritt Bichel's Response and Brief in Opposition, filed September 19, 2023 (ECF No. 12); and Defendant [KISD's] Reply Brief, filed September 27, 2023 (ECF No. 13). Also pending in Cause No. 4:23-cv-00886 ("the Consolidated Case") are Defendant Dr. Stephanie Devlin's Motion to Dismiss Plaintiff's Original Petition For Declaratory Judgment and supporting brief, filed August 28, 2023 (ECF Nos. 3, 4); Plaintiff's Response and Brief in Opposition, filed September 18, 2023 (ECF No. 6); and Defendant Dr. Devlin's Reply Brief, filed September 29, 2023 (ECF No. 7). After considering the pleadings and applicable legal authorities, the Court **GRANTS** the Motions and **DISMISSES** Plaintiff's claims **WITH** leave to amend them, except as to Plaintiff's Title IX claims against Dr. Devlin, which are **DISMISSED WITHOUT** leave to amend.

**I.     BACKGROUND**

Plaintiff Merritt Bichel ("Bichel") alleges that while attending Kennedale High School, she "was the subject of a Title IX violation as a result of interactions with another student at the school

which was not investigated according to Title IX requirements and the school policies of [KISD]." ECF No. 3 at 1. Bichel alleges that she was "bullied and sexually harassed by several students at Kennedale High School," one of whom was an adult at the time, and she reported this "to her school counselor and principal." *Id*. at 2. Although the bullying allegations resulted in a "protracted investigation," "the sexual assault allegations, which were violations of the [KISD] Student Code of Conduct, were not properly investigated according to the [KISD] School Board Policy FHH." *Id*. at 2-3. Bichel alleges that although KISD and its Academic Dean contacted the Title IX coordinator and the alleged perpetrator's parents, the "Academic Dean never spoke to [Bichel] or her parent about the violations." *Id*. at 4-5. "Due to [KISD]'s lack of action, [Bichel] was subjected to a hostile environment, including several students actively harassing [her]." *Id*. at 3.

On August 2, 2023, Bichel sued KISD in this Court. ECF No. 1. She sued under Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et. seq.), also referencing "the denial of [her] equal protection rights, procedural due process violations, and substantive due process violations under the Fourteenth Amendment to the U.S. Constitution." ECF No. 3 at 1-2. Bichel also alleges violations of KISD's codes of conduct and handbooks, as well as violations of Title IX regulations, specifically 34 C.F.R. § 106.45(a) ("A recipient's treatment of a complainant or a respondent in response to a formal complaint of sexual harassment may constitute discrimination on the basis of sex under Title IX."). *Id*. at 4. She alleges that KISD "was required to offer [her] supportive measures as defined in 34 C.F.R. § 106.30." *Id*. Additionally, Bichel alleges that under Title IX regulations, KISD "was required to apply any provisions, rules, or practices adopted by [KISD] as a part of its grievance process for handling formal complaints of sexual harassment as defined by 34 C.F.R. § 106.30, equally to both the complainant and the respondent." *Id*. at 5. She

alleges that KISD's "actions and lack of actions amount to deliberate indifference in light of the known circumstances." *Id*. at 8.

On August 28, 2023, KISD moved to dismiss Bichel's complaint for failure to state a claim as required under Fed. R. Civ. P. 12(b)(6). ECF No. 9. KISD argues that Bichel's claims for violations of her substantive due process, procedural due process, and Equal Protection Clause rights are unsupported. ECF No. 10 at 4-6. KISD also asserts that even if Bichel had pleaded facts to support these constitutional claims, it is not liable under a *respondeat superior* or municipal liability theory. *Id*. at 7. KISD seeks dismissal of Bichel's Title IX claims because the Complaint contains "nothing more than a boilerplate recitation of Title IX law," rather than facts supporting each of the required elements for a school district to be liable for student-on-student harassment. *Id*. at 8. KISD also complains that "the Court cannot even determine the identity of the alleged harassers" or "whether the harassment is actionable . . . given that [Bichel] provided no details of the alleged harassment, how long the harassment occurred, whether the harassment continued after she made a report, or who had actual knowledge of the alleged conduct." *Id*. Bichel responds that KISD misconstrues her argument and that "[i]t is precisely [KISD]'s treatment of [Bichel] in response to a formal complaint of sexual harassment which is the subject matter of [her] suit, not student-on-student harassment." ECF No. 12 at 16.

Bichel also brings similar claims against Dr. Stephanie Devlin, KISD's Director of Counseling, in the Consolidated Case. In that suit, Bichel seeks "a declaration that [Dr. Devlin] violated [her] constitutional right to an education by failing to comply with Title IX . . ., 34 C.F.R. § 106.45(a)[,] and [ ] 34 C.F.R. § 106.30, and [KISD's] 2020-2021 Student Code of Conduct." ECF No. 1-8 at 2. Dr. Devlin moved to dismiss the case, arguing that qualified immunity applies to her actions, that Bichel fails to state a claim that her constitutional rights were violated, and that

any Title IX claims against her should be dismissed (presumably because she is an individual). ECF Nos. 3-4. Dr. Devlin also argues that declaratory relief is inappropriate given the facts of the case. ECF No. 4.

On October 13, 2023, the Court consolidated the two cases into a single action. *Devlin* ECF No. 12. The Motions to Dismiss in both cases are now ripe for the Court's review.

**II.   LEGAL AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff ... and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A statute of limitations may support dismissal under Rule 12(b)(6) when it is evident from the plaintiff's pleadings that the action is barred, and the pleadings fail to raise some basis for tolling or avoidance of the bar. *Jones v. ALCOA, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

**III.     ANALYSIS**

    **A.     Bichel has not plausibly claimed a violation of her constitutional rights.**

        **i.     She has not adequately shown a constitutional violation.**

Bichel has not properly pleaded facts to show a violation of her rights under the Due Process or Equal Protection Clauses. First, she has not stated a plausible procedural due process claim. The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "[A] student's legitimate entitlement to a public education" is a "property interest which is protected by the Due Process Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975); *see also Babinski v. Sosnowski*, 79 F.4th 515, 523 (5th Cir. 2023) (explaining that students "have a Fourteenth Amendment right to some degree of procedural due process before or shortly after university officials take certain adverse actions against them.").

For her procedural due process claim, Bichel argues that "[s]exual assault allegations were not properly investigated" and that "Defendant's delays and failures to act denied [Bichel] the right to access [ ] the educational opportunities or benefits provided by the school." ECF No. 12 at 10, 11. To substantiate this argument, she raises possible defects in the investigation process. *Id*. at 7-10. She alleges that "[KISD]'s Academic Dean never spoke to [her] or her parents about the violations," which, the Court notes, may have deprived her of "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 8; *Shah v. Univ. of Tex. Sw. Med. School*, 129 F. Supp. 3d 480, 497 (N.D. Tex. 2015) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). However, Bichel's assertion that "[d]ue to Defendant's lack of action, [she] was subjected to a hostile environment, including several students actively harassing [her]" is not detailed enough to demonstrate under *Twombly* and *Iqbal* that KISD, through its investigation process, deprived her

5

of her property interest in a legitimate entitlement to a public education. *Goss*, 419 U.S. at 574; *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Without more facts about the ensuing "hostile environment," the Court cannot find that the potentially defective process ultimately resulted in a deprivation of rights. Accordingly, Bichel has not stated a plausible procedural due process claim.

Likewise, she has not stated a plausible substantive due process claim. The Supreme Court has recognized that the Due Process Clause contains a substantive component "protect[ing] against government interference with certain fundamental rights and liberty interests," particularly those that are "deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 720, 721 (1997). These interests include the right "to marry, to have children, to direct the education and upbringing of one's children, to marital privacy," and other similar rights. *Id*. at 720. "In order to hold the State liable for violating plaintiffs' substantive due process rights, plaintiffs are required to demonstrate that the State's conduct shocks the conscience." *M.D. by Stukenberg v. Abbott*, 907 F.3d 237, 253 (5th Cir. 2018) (internal citations and quotations omitted).

The flaws in Bichel's substantive due process argument result, at least in part, from conflating procedural and substantive due process. Bichel correctly notes that a "student's legitimate entitlement to a public education" is a "property interest which is protected by the Due Process Clause." ECF No. 12 at 11; *Goss,* 419 U.S. at 574. But the fact that an entitlement to a public education is a property interest protected by procedural due process guarantees does not automatically make it a "fundamental right" or "liberty interest" protected by substantive due process guarantees. *Id*.; *Glucksberg*, 521 U.S. at 720. In *San Antonio Independent School District v. Rodriguez*, the Supreme Court "carefully considered each of the arguments supportive of the District Court's finding that education is a fundamental right or liberty and [ ] found those

arguments unpersuasive." 411 U.S. 1, 37 (1973). Therefore, Bichel has not explained how Defendants violated her substantive due process rights under the *Twombly* and *Iqbal* standards.

Second, Bichel has not stated a plausible claim under the Equal Protection Clause. The Equal Protection Clause prevents States from denying any person within their jurisdiction the "equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim under the Equal Protection Clause, Bichel must allege that she (1) "received treatment different from that received by similarly situated individuals" and (2) "the unequal treatment stemmed from a discriminatory intent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (internal citations and quotations omitted). To establish discriminatory intent, Bichel must show "that the decision maker singled out a particular group for disparate treatment and selected [its] course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Id*. However, Bichel's pleadings do not meet this standard. She pleads that "[KISD] discriminated against her by not properly investigating her Title IX complaint because of her gender," but she does not explain or substantiate this claim further, either in her Amended Complaint or her Reply. ECF No. 12 at 14. Accordingly, Bichel has not explained how Defendants violated her Equal Protection rights.

Finally, Bichel's threadbare pleadings in the Consolidated Case also do not state constitutional claims against Dr. Devlin. Because Dr. Devlin pleaded qualified immunity to Bichel's claims, Bichel would not only need to show that Dr. Devlin violated one of her constitutional rights, but also that that right was clearly established at the time of Dr. Devlin's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  Bichel has not pleaded facts to meet either prong. Therefore, Bichel's constitutional claims against Dr. Devlin also should be dismissed.

### ii. She has not adequately shown KISD's municipal liability.

Bichel also has not pleaded facts to show KISD's liability. Like other school districts, KISD "cannot be held liable under Section 1983 on a theory of respondeat superior for the actions of its employees." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Therefore, the Court focuses on the issue of municipal liability.

To plead municipal liability under § 1983, Bichel must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

The first element requires Bichel to show an official policy. The definition of "official policy" applies not only to municipalities, but also to school districts. *Eugene*, 65 F.3d at 1304. An official policy is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Eugene,* 65 F.3d at 1304.

The second element of a § 1983 municipal liability claim requires the plaintiff to plead that the person acting on behalf of the municipality was an official policymaker. *Peterson*, 588 F.3d at 847. The policymaker must have final policymaking authority and take the place of the governing

body in a designated area of the municipality's administration. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984); *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). A municipality's governing body may delegate policymaking authority expressly or implicitly. *Bennett*, 728 F.2d at 769. Under Texas law, an independent school district's final policymaking authority rests with the district's board of trustees. *Jett v. Dall. Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir. 1993).

The third element requires Bichel to show that a policy is the moving force behind a constitutional violation. *Peterson*, 588 F.3d at 847. To do so, she must show "a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. For an official policy to be the moving force behind a constitutional violation, the policymaker must have acted with "deliberate indifference" to the policy's known or obvious unconstitutional consequences. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety. *Id; see McClendon v. City of Columbia,* 305 F.3d 314, 326 n.8 (5th Cir. 2002).

To demonstrate that she met these standards, Bichel briefly argues "that the numerous employees of [KISD] who failed to comply with Title IX and [KISD]'s own policies regarding Title IX complaints amounts to [a] custom adopted with deliberate indifference by the District's ISD Board of Trustees." ECF No. 12 at 15. She also explains that KISD's "acts and omissions [that] created a hostile learning environment, failed to provide remedies to [Bichel], and violated [Defendant KISD's] own policy regarding the length of the investigation are so extreme and unconscionable[ ] that such actions show [ ] conscious indifference." ECF No. 3 at 6. These conclusory assertions do not meet the plausibility standards set forth in *Twombly* and *Iqbal* and do not sufficiently plead the facts necessary to support Bichel's claims of municipal liability.

9

### B.     Bichel has not pleaded a plausible case for violation of Title IX.

Under Title IX, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). An implied private right of action exists to enforce Title IX, and monetary damages are available. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979)).

Under Title IX, Bichel must show that the alleged discrimination against her was intentional. *Walter v. Birdville Indep. Sch. Dist.*, No. 4:18-cv-301-A, 2018 WL 3974714, at *2 (N.D. Tex. Aug. 20, 2018) (citing *Fort v. Dall. Indep. Sch. Dist.*, 82 F.3d 414, 1996 WL 167072, at *3 (5th Cir. 1996)). "To violate Title IX, a funding recipient need not have intended to violate Title IX, but need only have intended to treat women differently." *Poloceno v. Dall. Indep. Sch. Dist.*, No. 3:18-cv-01284-E, 2019 WL 7305216, at *2 (N.D. Tex. Dec. 30, 2019), *aff'd*, 826 F. App'x 359 (5th Cir. 2020) (citing *Pederson v. La. State Univ.*, 213 F.3d 858, 881 (5th Cir. 2000)).

Various theories of liability can support recovery under Title IX. "A plaintiff can bring a Title IX claim when there is an official policy of intentional discrimination by an institution." *Poloceno*, 2019 WL 7305216, at *2 (citing *Gebser*, 524 U.S. at 290). "A plaintiff can also bring a Title IX claim when an institution itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of discrimination of which it had actual knowledge." *Id*. (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639 (1999)). Title IX also "seeks to hold an institution liable for teacher-on-student or student-on-student sexual harassment." *Doe #1 v. Bd. of Supervisors of La. State Univ. and Agric. and Mech. Coll.*, No. 21-564-SDD-SDJ, 2022 WL 16701930, at *12 (M.D. La. Nov. 3, 2022) (citing *Pederson*, 213 F.3d at 882). "Retaliation for

10

making a complaint of sex discrimination also constitutes intentional discrimination in violation of Title IX." *Id*. (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 164 (2005)).

Overall, "liability under Title IX arises not from the discrimination or harassment itself but from an official decision by the [funding] recipient not to remedy the violation." *Salazar v. South San Antonio Indep. Sch. Dist.*, 953 F.3d 273, 278 (5th Cir. 2017). The failure to respond "must amount to deliberate indifference to discrimination." *Id*. at 290. However, a school district's failure to follow its own harassment policies is not itself sufficient to demonstrate Title IX liability. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011). "Title IX does not require flawless investigations or perfect solutions." *Id*. at 170.

Bichel appears to bring a claim under a deliberate indifference theory of Title IX liability, but not one fundamentally based on student-on-student harassment. The parties agree that

> [a] school district that receives federal funds may be liable for student-on-student harassment if the district (1) had actual knowledge of the harassment, (2) the harasser was under the district's control, (3) the harassment was based on the victim's sex, (4) the harassment was so severe, pervasive, and objectively offensive that it effectively barred the victim's access to an educational opportunity or benefit, and (5) the district was deliberately indifferent to the harassment.

*Id*. at 165; ECF No. 12 at 15-16. But Bichel attests that this is not the standard she wishes the Court to apply. ECF No. 12 at 16.

More specifically, although KISD characterizes the Complaint as relating to liability for student-on-student harassment (ECF No. 10 at 8), Bichel clarifies that she is not seeking to hold KISD liable for the student-on-student harassment, but rather, for "[KISD]'s treatment of [her] in response to a formal complaint of sexual harassment." ECF No. 12 at 16. Bichel points to 34 C.F.R. §106.45(a), which states, "A recipient's treatment of a complainant or a respondent in response to a formal complaint of sexual harassment may constitute discrimination on the basis of sex under

Title IX." *Id*. Bichel also alleges that KISD failed to offer her supportive measures, pointing to 34 C.F.R. § 106.30. ECF No. 3 at 4; ECF No. 12 at 11; *see also* 34 C.F.R. § 106.45(b)(10)(ii)("If a recipient does not provide a complainant with supportive measures, then the recipient must document the reasons why such a response was not clearly unreasonable in light of the known circumstances."). Bichel ultimately concludes that KISD's "lack of investigation, failure to provide supportive measures, and denial of [her] access to basic academic support was unreasonable," and that KISD's "actions and lack of actions amount to deliberate indifference in light of the known circumstances." ECF No. 3 at 5.

To show deliberate indifference, Bichel must plead that an "appropriate person had knowledge of the discrimination and responded with deliberate indifference." *Poloceno*, 826 F. App'x at 362 (internal citations and quotations omitted). Such discrimination must be intentional and must be based on sex. *Id*. But Bichel has not pleaded facts to show deliberate indifference. She has not set out facts to support a claim that Defendants intentionally treated her differently during the investigation process on the basis of her sex.

KISD notes Bichel's references to Title IX regulations and argues that there is no private right of action to enforce Title IX's administrative regulations. ECF No. 13 at 3; *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 292 (1998) ("We have never held, however, that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements."). KISD is correct, but Bichel may refer to the regulations not in isolation, but as part of a broader deliberate indifference argument. ECF No. 3 at 3-5.

In the Consolidated Case, Bichel arguably seeks to recover against Dr. Devlin under Title IX. ECF No. 1-8. Such a claim must be dismissed. "Title IX reaches institutions and programs that receive federal funds . . . but it has consistently been interpreted as not authorizing suit against

12

school officials, teachers, and other individuals." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) (internal citations and quotations omitted); *see also Stollings v. Texas Tech Univ.*, No. 5:20-CV-250-H, 2021 WL 3748964 at *12 (N.D. Tex. Aug. 25, 2021) (applying *Fitzgerald* to dismiss a Title IX claim against an individual). "A district court may refuse leave to amend if the filing of the amended complaint would be futile, i.e., if the complaint as amended would be subject to dismissal." *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014). Therefore, all Title IX claims against Dr. Devlin should be dismissed with prejudice.

### C. The Court grants Bichel leave to amend her First Amended Complaint against KISD.

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Frias, et al. v. Hernandez, et al.*, No. 3:23-CV-0550-D, 2023 WL 7311193, at *4 (N.D. Tex. Nov. 6, 2023) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). Because Bichel has not stated that she cannot, or is unwilling to, cure the defects that the court has identified in her pleadings against KISD, the Court grants her twenty-one days from the date this Memorandum Opinion and Order is filed to file a second amended complaint that addresses the deficiencies in her pleading against KISD noted above. *Frias*, 2023 WL at *4. Because Bichel cannot cure her claim under Title IX against Dr. Devlin, the Court does not grant leave for her to amend that claim.

## IV. CONCLUSION

Bichel has failed to state claims under the Constitution and under Title IX. She also has not successfully pleaded facts to show KISD's municipal liability. Therefore, the Court **GRANTS** Defendant Kennedale Independent School District's Motion to Complaint

13

(ECF No. 9) and Defendant Dr. Stephanie Devlin's Motion to Dismiss Plaintiff's Original Petition For Declaratory Judgment (ECF No. 3) filed in the Consolidated Case, Cause No. 4:23-cv-00886. Although the Court **GRANTS** the motions to dismiss, it allows Bichel to replead the claims addressed in this Memorandum Opinion and Order, except as to the Title IX claims against Dr. Devlin. Bichel **SHALL FILE** a second amended complaint that addresses the deficiencies noted above on or before twenty-one days after the date of this Memorandum Opinion and Order.

It is so **ORDERED** on December 13, 2023.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE