IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **MERRITT BICHEL,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00804-BP** |
| | § | |
| **KENNEDALE INDEPENDENT** | § | **(Consolidated with Civil Action No. 4:23-** |
| **SCHOOL DISTRICT,** *et al.*, | § | **00886-BP)** |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the Motion to Dismiss Plaintiff's Second Amended Complaint and supporting brief, filed January 17, 2024 by Kennedale Independent School District ("KISD") and Dr. Stephanie Devlin ("Devlin"). ECF Nos. 20, 21. Plaintiff Merritt Bichel ("Bichel") did not respond to these filings. After considering the pleadings and applicable legal authorities, the Court **GRANTS** the Motion and **DISMISSES** Bichel's claims.

## I.      BACKGROUND

Bichel alleges that while attending Kennedale High School ("KHS"), her rights were violated under Title IX and under the Constitution. ECF No. 19 at 1-2. The Second Amended Complaint describes two general categories of incidents giving rise to these alleged violations: 1) obscene name-calling by members of the jazz band, possibly fueled by someone sharing an intimate picture of Bichel without her consent, and 2) obscene name-calling in text messages by someone with the screen name "Skankhunter." *See generally id.*

The jazz band incidents began in March 2020 when several KHS students, some of whom were members of the band, "bullied and sexually harassed" Bichel. *Id.* at 3. "These students called

[Bichel] a 'h\*\*,' a 'desperate h\*\*,' and a 'wh\*\*\*.'" *Id*. Several weeks later, another student called Bichel a "bi\*\*\*" in connection with a band rehearsal. *Id*.

"This was very upsetting to [Bichel]. She cried, this ruined her self-confidence, and she became very nervous and afraid when around them in class." *Id*. "[Bichel] feels that these students made her hate everything about jazz band, such as the music, her confidence, her ability to have friends, and her ability to have fun." *Id*.

Defendant KISD knew about the jazz band incident and its possible cause. On February 10, 2021, Bichel met with KISD's counselor to report that the band students were harassing her. *Id*. At this meeting, Bichel also reported that a student in the band had an intimate picture of her on his phone. *Id*. at 4. Bichel believed that this student had discussed or shared this picture with their band classmates and "that this was the catalyst of the patterns of band students sexually harassing Bichel." *Id*. Bichel also alleges that she provided information about the band incidents to KISD on or about February 2, 10, 18, and 19, and March 2, 2021. *Id*. at 3.

On March 23, 2021, Bichel received text messages during school hours from "Skankhunter," who called her "a 'cu\*\*,' 'sl\*\*,' 'wh\*\*\*,' 'bi\*\*\*,' and 'h\*\*.'" *Id*. at 4. Bichel believed the person was associated with a KHS student whose affections she had recently rejected, since the texts referenced this student, and two other students, by name. *Id*. Bichel notified KISD of this incident on or about March 23 and 29, 2021. *Id*.

In response to Bichel's complaints, KISD conducted a "protracted investigation" into the bullying and sexual harassment. *Id*. KISD contacted the school's Title IX coordinator, the Academic Dean contacted the parents of at least one of the alleged perpetrators, and the Academic Dean "had a conversation with the school Counselor and Defendant Devlin regarding the Title IX violations." *Id*. at 5.

However, Bichel alleges that Defendants' response to incidents was inadequate. She alleges that KISD did not follow School Board Policy FHH ("Policy FHH") when investigating the sexual harassment allegations, that the Academic Dean did not speak to Bichel or her parents about the violations, and that Devlin did not contact Bichel's parents about the violations. *Id*. Bichel alleges that "[KISD's] lack of investigation, failure to provide supportive measures, and denial of [Bichel]'s access to basic academic support was unreasonable," making KISD deliberately indifferent. *Id*. at 10. Bichel alleges that KISD and Devlin "received information about the students' sexual harassment of [Bichel] and did not provide her any relief." *Id*. at 5.

Bichel also argues that such inadequacies harmed her. She alleges that due to Defendants' inaction after she began reporting the incidents in February 2021, she was "subjected to a hostile environment, including several students actively harassing" her, including the offensive texts mentioned above. *Id*. She experienced mental anguish "created by Defendant's misconduct and failure to provide remedies…." *Id*. at 11. She alleges that she "required the supportive measures that [KISD] was statutorily required to provide to her…." *Id*. at 10. As a result, "[KISD's] delays and failures to act denied her the right to access the educational opportunities or benefits provided by the school." *Id*.

Bichel sues KISD and Devlin for violating her procedural due process rights and her rights under Title IX. *Id*. at 2. She also seeks a declaration under the Texas Declaratory Judgment Act, Chapter 37, Civil Practice and Remedies Code, that Devlin violated her "constitutional right to an education by failing to comply with Title IX of the Education Amendments of 1972, 34 C.F.R. §106.45(a) and in 34 C.F.R. § 106.30, and the [KISD] 2020-2021 Student Code of Conduct ("Student Code")." *Id*.

Additionally, Bichel refers to other policies and regulations, listing some of them as additional causes of action. First, Bichel refers to the Student Code and Policy FFH and lists them as causes of action. *Id*. at 6-7, 9. However, she does not explain how these documents create an independent cause of action, nor could she since a school district's failure to follow its own harassment policies is not itself sufficient to demonstrate Title IX liability. *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011). In the absence of facts to explain how these documents provide independent bases for her claims, the Court construes such references to the Student Code and Policy FHH as further support for her claims that Defendants violated the Constitution and Title IX, not as independent causes of action.

Second, Bichel also appears to argue that sex discrimination in the course of KISD's investigation violated Title IX. ECF No. 19 at 7, 9. Defendants construe Bichel to solely bring a claim for student-on-student harassment theory, but the Court addresses Bichel's argument as a separate claim.

Third, Bichel appears to allege that KISD applied Title IX regulations in an unequal or discriminatory manner in violation of the Fourteenth Amendment's Equal Protection Clause. ECF No. 19 at 10 ("The enforcement by Defendant School of Title IX regulations in a discriminatory manner is within the Fourteenth Amendment."). Defendants do not address this argument in their Motion, but the Court does so below.

Defendants move to dismiss the Second Amended Complaint because Bichel did not state a procedural due process claim, show KISD's municipal liability, or overcome Devlin's claim of qualified immunity. *Id*. at 10-12, 16-18. They also argue that Bichel did not state a claim under Title IX because she did not allege facts showing "severe, pervasive, and objectively offensive sex/gender based conduct that is actionable under Title IX" and because KISD was not deliberately

indifferent. *Id*. at 13-16. Finally, they argue that Bichel's request for declaratory judgment should be denied because she has no viable cause of action on which to base it and because it is contrary to public policy. *Id*. at 19-21.

## II.     LEGAL AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff ... and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    ANALYSIS

### A.     Bichel has not plausibly claimed a violation of her constitutional rights.

#### 1.     She has not adequately shown a due process violation.

Bichel has not stated a plausible procedural due process claim. The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "[A] student's legitimate entitlement to a public education" is a "property interest which is protected by the Due Process Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975); *see also Babinski v. Sosnowski*, 79 F.4th 515, 523 (5th Cir. 2023) (explaining that students "have a Fourteenth Amendment right to some degree of procedural due

process before or shortly after university officials take certain adverse actions against them."). "Applying *Goss*, [the Fifth Circuit's] cases have explained that due process is triggered only by a student's total exclusion from the educational process." *James v. Cleveland Sch. Dist.*, 45 F.4th 860, 865 (5th Cir. 2022) (internal citations and quotations omitted). "… [S]tudents lack any protected interest in the separate components of the educational process. This means no protected property interest is implicated when a school declines to offer a student a particular curriculum or denies participation in interscholastic athletics." *Id.* (internal citations and quotations omitted).

Even assuming that Bichel had been constructively, or even actually, denied participation in jazz band, this would not be enough to amount to a procedural due process violation under the logic of *James*. Exclusion from jazz band is not "total exclusion from the educational process," but rather, is comparable to the denial of particular curricular offerings or the denial of participation in interscholastic athletics. *Id.* Jazz band is a "separate component[ ] of the educational process" in a typical high school, not the entire "educational process," itself. *Id.* Therefore, Bichel's procedural due process claim based on the jazz band incidents fails. Bichel's procedural due process claim based on the texting incident is unavailing for similar reasons. Bichel has not explained how this incident resulted in her "total exclusion from the educational process." *Id.* Therefore, Bichel has not stated a procedural due process claim based on either the jazz band or texting incidents.

### 2. She has not pleaded facts to show an equal protection violation.

To the extent Bichel asserts that discrimination against her in the course of the sexual harassment investigation violated the Equal Protection Clause of the Fourteenth Amendment, she has not stated a plausible claim. The Equal Protection Clause prevents states from denying any person within their jurisdiction the "equal protection of the laws." U.S. Const. amend. XIV, § 1.

To state a claim under the Equal Protection Clause, Bichel must allege that she (1) "received treatment different from that received by similarly situated individuals" and (2) "the unequal treatment stemmed from a discriminatory intent." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015) (internal citations and quotations omitted). To establish discriminatory intent, Bichel must show "that the decision maker singled out a particular group for disparate treatment and selected [its] course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Id*. However, Bichel's Second Amended Complaint does not meet this standard. It pleads no facts suggesting that Bichel's gender, or any other protected characteristic she may possess, influenced how Defendants treated her during the course of the sexual harassment investigation. Accordingly, Bichel has not pleaded facts to show how Defendants violated her Equal Protection rights, and dismissal of such claims is appropriate.

### 3.    She has not shown Devlin is not entitled to qualified immunity.

Finally, Bichel's Second Amended Complaint also does not state a constitutional claim against Devlin. Because Devlin pleaded qualified immunity to Bichel's claims, Bichel would not only need to show that Devlin violated one of her constitutional rights, but also that that right was clearly established at the time of Devlin's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Bichel has not pleaded facts to meet either prong. Therefore, Bichel's constitutional claims against Devlin also should be dismissed.

### 4.    She has not adequately shown KISD's municipal liability.

Bichel also has not pleaded facts to show KISD's liability. Like other school districts, KISD "cannot be held liable under Section 1983 on a theory of respondeat superior for the actions of its employees." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot

be held liable under § 1983 on a *respondeat superior* theory."). To plead municipal liability under § 1983, Bichel must allege "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

The first element requires Bichel to show an official policy. The definition of "official policy" applies not only to municipalities, but also to school districts. *Eugene*, 65 F.3d at 1304. An official policy is:

1.    A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2.    A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *Eugene,* 65 F.3d at 1304.

The second element requires Bichel to plead facts showing that the person acting on behalf of the municipality was an official policymaker. *Peterson*, 588 F.3d at 847. The policymaker must have final policymaking authority and take the place of the governing body in a designated area of the municipality's administration. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984); *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984). A municipality's governing body may delegate policymaking authority expressly or implicitly. *Bennett*, 728 F.2d at 769. Under Texas law, an independent school district's final policymaking authority rests with the district's board of trustees. *Jett v. Dall. Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir. 1993).

The third element requires Bichel to show that a policy was the moving force behind a constitutional violation. *Peterson*, 588 F.3d at 847. To do so, she must show "a direct causal link between the municipal policy and the constitutional deprivation." *Piotrowski*, 237 F.3d at 580. For an official policy to be the moving force behind a constitutional violation, the policymaker must have acted with "deliberate indifference" to the policy's known or obvious unconstitutional consequences. *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410 (1997). To act with deliberate indifference, a state actor must know of and disregard an excessive risk to the victim's health or safety. *Id; see McClendon v. City of Columbia,* 305 F.3d 314, 326 n.8 (5th Cir. 2002).

Even assuming that Bichel had pleaded facts to show a violation of her constitutional rights, the Second Amended Complaint does not adequately plead facts demonstrating that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of [Bichel's] constitutional right[s]." *Peterson*, 588 F.3d at 847. To the extent that Bichel discusses school policies (and Title IX regulations), she argues that KISD did not follow the policies and regulations, not that it followed the policies, leading to unconstitutional consequences. ECF No. 19 at 6-7, 11; *see also Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. at 410; *Eugene,* 65 F.3d at 1304. Furthermore, Bichel did not offer facts to show that there was a widespread practice at KISD of ignoring its policies. Therefore, her constitutional claims against defendant KISD fail because she does not adequately plead facts to show KISD's municipal liability.

**B.   Bichel has not pleaded a plausible case for violation of Title IX.**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). An implied private right of action exists to enforce Title IX, and monetary damages are available. *Gebser v.*

*Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677 (1979)).

Under Title IX, Bichel must show that the alleged discrimination against her was intentional. *Walter v. Birdville Indep. Sch. Dist.*, No. 4:18-cv-301-A, 2018 WL 3974714, at *2 (N.D. Tex. Aug. 20, 2018) (citing *Fort v. Dall. Indep. Sch. Dist.*, 82 F.3d 414, 1996 WL 167072, at *3 (5th Cir. 1996)). "To violate Title IX, a funding recipient need not have intended to violate Title IX, but need only have intended to treat women differently." *Poloceno v. Dall. Indep. Sch. Dist.*, No. 3:18-cv-01284-E, 2019 WL 7305216, at *2 (N.D. Tex. Dec. 30, 2019), *aff'd*, 826 F. App'x 359 (5th Cir. 2020) (citing *Pederson v. La. State Univ.*, 213 F.3d 858, 881 (5th Cir. 2000)).

Various theories of liability can support recovery under Title IX. A plaintiff could allege that "an official policy of intentional discrimination by an institution," *Poloceno,* 2019 WL 7305216, at *2 (citing *Gebser*, 524 U.S. at 290), or that "an institution itself intentionally acted in clear violation of Title IX by remaining deliberately indifferent to acts of discrimination of which it had actual knowledge." *Id.* (citing *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 639 (1999)). Title IX also "seeks to hold an institution liable for teacher-on-student or student-on-student sexual harassment." *Doe #1 v. Bd. of Supervisors of La. State Univ. and Agric. and Mech. Coll.*, No. 21-564-SDD-SDJ, 2022 WL 16701930, at *12 (M.D. La. Nov. 3, 2022) (citing *Pederson*, 213 F.3d at 882). "Retaliation for making a complaint of sex discrimination also constitutes intentional discrimination in violation of Title IX." *Id.* (citing *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 164 (2005)).

"[L]iability under Title IX arises not from the discrimination or harassment itself but from an official decision by the [funding] recipient not to remedy the violation." *Salazar v. South San Antonio Indep. Sch. Dist.*, 953 F.3d 273, 278 (5th Cir. 2017). The failure to respond "must amount

to deliberate indifference to discrimination." *Id.* at 290.  However, a school district's failure to follow its own harassment policies is not itself sufficient to demonstrate Title IX liability. *Sanches*, 647 F.3d at 170. "Title IX does not require flawless investigations or perfect solutions." *Id.* at 170.

Prior to filing the Second Amended Complaint, Bichel explicitly disclaimed pursuing a student-on-student harassment theory of Title IX liability. ECF No. 12 at 16. The Second Amended Complaint does not include such a disclaimer, and Defendants, in moving to dismiss the Second Amended Complaint, interpret it to be pursuing such a theory. ECF No. 21 at 12-16. For the sake of completeness, the Court considers whether Bichel has stated a claim for student-on-student harassment or for discrimination during the investigation process.

The Court dismissed all Title IX claims against Devlin with prejudice in its Memorandum Opinion and Order entered December 23, 2023. However, in her Amended Complaint, Bichel appears to continue to seek a declaration that Devlin violated her rights under Title IX, though she is not seeking "relief provided by Title IX itself." ECF No. 19 at 3. Both KISD and Devlin authored the brief in support of the Motion to Dismiss, but because KISD is the only proper defendant at this point to respond to Bichel's Title IX claims, the Court attributes the Title IX arguments below to KISD rather than to both Defendants. The Court separately considers Bichel's claims for declaratory judgments below.

### 1.    She has not pleaded a plausible case of student-on-student harassment.

To recover on a student-on-student harassment theory, Bichel must plead facts to show that KISD "(1) had actual knowledge of the harassment, (2) the harasser was under [KISD's] control, (3) the harassment was based on the victim's sex, (4) the harassment was 'so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational

opportunity or benefit,' and (5) [KISD] was deliberately indifferent to the harassment." *Sanches*, 647 F.3d at 170.

Regarding the jazz band incident, KISD does not appear to dispute the first two elements. On the third element, KISD argues that the harassment was not based on Bichel's sex, but in doing so, focuses on the lack of information about the sex of the student harassers. ECF No. 21 at 13-14. Even if all of the perpetrators were female, however, "[s]ame-sex sexual harassment is actionable under title IX." *Sanches*, 647 F.3d at 165.

To be based on sex, the conduct must be "gender-oriented" or "gender-related." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651-52 (1999); *Chavez v. Richardson Indep. Sch. Dist.*, No. 3:16-cv-2563-B, 2017 WL 3620388, at *8 (N.D. Tex. Aug. 23, 2017) ("[A] plaintiff must allege pervasive gender-related harassment to state a Title IX claim; allegations of general bullying, teasing, or name-calling will not do.") (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). The conduct must not be "merely tinged with offensive sexual connotations." *Sanches*, 647 F.3d at 165. However, "[w]hether gender-oriented conduct rises to the level of actionable 'harassment' thus 'depends on a constellation of surrounding circumstances, expectations, and relationships…'" *Davis*, 526 U.S. at 651-52. "Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender." *Id*. "Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *Id*.

The limited case law in the Fifth Circuit on the use of these particular epithets focuses on the extent and severity of the conduct or whether the epithets are gender-based. In *Sanches*, the

court found that calling someone a "h*" "only once" "by no means qualifies as harassment at all." 647 F.3d at 156. A court in the Eastern District of Texas found that "sexual harassment can encompass a wide range of maltreatment, including use of other sex-specific derogatory terms like 'bi***' and comments on the appearance of the victim." *Prendergast as Next Friends of L.P. v. Wylie Indep. Sch. Dist.*, No. 4:18-cv-00020-ALM-KPJ, 2019 WL 6710034, at *7 (E.D. Tex. Dec. 4, 2018). Likewise, where a student was called "h**" and "bi***", the Southern District of Texas found that harassment of a student was based on sex. *S.M. v. Sealy Indep. Sch. Dist.*, No. H-20-705, 2021 WL 1599388, at *4 (S.D. Tex. Apr. 23, 2021). Applying this authority, the Court concludes that the harassment of Bichel was based on sex, especially because of the use of the word, "bi***."

On the fourth element, KISD argues that the Second Amended Complaint is "severely lacking in details" as to whether the jazz band harassment was "sufficiently severe, pervasive, and objectively offensive" to be actionable under Title IX, particularly because Bichel did not "provide the Court with any indication as to how often or for how long this name calling lasted." ECF No. 21 at 13.

To determine whether harassment was so severe, pervasive, and objectively offensive that it effectively bars a student's access to an educational opportunity or benefit, the Fifth Circuit uses a totality of the circumstances test. *See West v. City of Hous., Texas*, 960 F.3d 736, 742 (2020). The Court looks at the (1) frequency of the acts, (2) severity of the acts, (3) whether the acts were physically threatening or humiliating or merely offensive utterances, and (4) whether the acts unreasonably interfere with the learning environment. *Id*. "Whether conduct rises to the level of actionable harassment 'depends on a constellation of surrounding circumstances, expectations, and

relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved.'" *Sanches*, 647 F.3d at 167 (internal citations omitted).

The Fifth Circuit "has not yet opined on what constitutes 'pervasive' harassment." *Roe*, 53 F.4th at 343. Bichel has not pleaded facts to show how often the jazz band harassment occurred, only that the harassment started "in March 2020" and was still of such concern to her in spring 2021 that she or someone acting on her behalf reported it to KISD on five different occasions between February 2, 2021 and March 2, 2021. ECF No. 19 at 3-4. Though she has not shown facts demonstrating the frequency of the harassment, the gap between the alleged start date and Bichel's first report of this behavior to KISD suggests that the harassment lasted almost a year. *Id.*

As for severity, the Court finds that it is objectively offensive to call a female high school student a "h\*\*," "desperate h\*\*," "wh\*\*\*," and "bi\*\*\*." However, this is not as severe as some conduct described in Title IX cases in this circuit involving student-on-student harassment. *See, e.g., I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 364 (5th Cir. 2019); *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 337-40, 343 (5th Cir. 2022); *Chavez*, 2017 WL 3620399, at \*2; *P.S. v. Brownsboro Indep. Sch. Dist.*, 6:21-cv-427-JDK, 2022 WL 14151208, at \*1-2 (E.D. Tex. Oct. 24, 2022); *Colomo v. Bonds*, No. 6:11-CV-014-C, 2012 WL 12960643, at \*1-2, 4 (N.D. Tex. May 7, 2012). The conduct in the instant case is roughly comparable to the conduct in *Sanches*, where the Fifth Circuit found that the conduct "was not severe, pervasive, or objectively unreasonable." 647 F.3d at 164, 167 (finding this element not met in case involving inappropriate touching, calling the victim a "h\*," and rumors about sexual behavior and pregnancy).

The conduct here was not physically intimidating, though it could be considered humiliating, as it pertained to Bichel's alleged sex life and it "ruined her self-confidence." ECF No. 19 at 3. The harassment also unreasonably interfered with the learning environment because

14

it made Bichel "hate everything about jazz band, such as the music" and she "became very nervous and afraid when around [the harassers] in class." *Id.*

However, the Court concludes that Bichel has not pleaded facts sufficient to meet the fourth element. Although the jazz band conduct was objectively offensive—even humiliating at times, perhaps—and may have occurred over a long period, the conduct was only moderately severe and Bichel did not show the frequency of the conduct. The conduct appears to have interfered with her jazz band learning experience, but not so much as to have effectively barred access to the educational opportunity. It is instructive that Bichel does not allege, for example, that she quit the jazz band because of the harassment or considered doing so. *Compare I.F.*, 915 F.3d at 373 ("I.F. has raised a genuine dispute as to whether the harassment effectively barred her access to an educational opportunity or benefit because she provided evidence that she felt that she could not return to Hebron on account of the harassment.").

On the fifth element, KISD argues that it was not deliberately indifferent, particularly because engaged in a "protracted investigation" of her sexual harassment allegations. ECF No. 21 at 15. It also argues that Bichel did not plead facts to show "that she continued to suffer sexual harassment at the hands of the various individuals identified after reporting the alleged conduct," though KISD admits Bichel states generally that she "continued to be subjected to 'bullying and sexual harassment.'" *Id*. KISD concludes that Bichel has not pleaded sufficient facts to show deliberate indifference because of its extensive investigation and because she did not show that the harassment continued despite KISD's actions. *Id.*

"For a school to be liable under title IX, its response, or lack thereof, to the harassment must be clearly unreasonable in light of the known circumstances. That is a high bar, and neither negligence nor mere unreasonableness is enough." *Sanches*, 647 F.3d at 167 (internal citations and

15

quotations omitted). "Schools are not required to remedy the harassment or accede to a parent's remedial demands, and courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Id*. (citations and quotations omitted).   "Because the deliberate indifference inquiry focuses on the school's response to known harassment, the response must be so deficient as to *itself* constitute harassment." *I.L. v. Hous. Indep. Sch. Dist.*, 776 F. App'x 839, 843 (5th Cir. 2019) (emphasis in original). In *Sanches*, a case with somewhat similar facts, the Fifth Circuit found a school's response to be sufficient when it "responded promptly to each report of verbal harassment; interviewed many of the parties involved, including the accuser, accused, other students, and teachers; and compiled a formal report detailing the District's 'investigations of and responses to' five allegations of verbal harassment." *Roe*, 53 F.4th at 346.

As noted above, Bichel alleges that KISD did not investigate according to its policy, have the Academic Dean speak to Bichel's parents or to Bichel, have Devlin speak to Bichel's parents, did not provide supportive measures, and did not provide any relief to Bichel. ECF No. 19 at 5, 10.   Although it is possible that such deficiencies were negligent or unreasonable, the Court concludes that KISD's investigation was not "clearly unreasonable," particularly because Bichel agrees that KISD conducted a "protracted investigation." *Id*. at 4. Bichel concedes that KISD contacted the school's Title IX coordinator, the Academic Dean contacted the parents of at least one of the alleged perpetrators, and the Academic Dean "had a conversation with the school Counselor and Defendant Devlin regarding the Title IX violations." *Id*. at 5. Furthermore, while Bichel asserts that she did not receive "supportive measures," such measures are provided only "as appropriate, as reasonably available" (34 C.F.R. § 106.30), and Bichel has not shown that failing to provide her with supportive measures was "clearly unreasonable." Accordingly, the Court declines to "second-guess[ ] the disciplinary decisions made by school administrators,"

particularly those that follow a "protracted investigation." *Sanches*, 647 F.3d at 167; ECF No. 19 at 4.

Regarding the texting incident, Defendants do not dispute KISD's knowledge of the incident, but they do not concede that it had control over the harasser. ECF No. 21 at 14. The Fifth Circuit has explained that "[t]he law imposes a relatively low threshold for proving a school exercised substantial control over a student. Liability can attach when, as here 'the misconduct occurs during school hours and on school grounds.'" *Kelly v. Allen Indep. Sch. Dist.*, 602 F. App'x 949, 953 n.3 (quoting *Davis*, 526 U.S. at 646)). The Court previously has confirmed that "students are under [a] school's control during school hours, on school grounds, when [ ] involved in school activities, or when otherwise under the supervision of school employees." *Chavez v. Richardson Indep. Sch. Dist.*, 2017 WL 3620388, at *8 (N.D. Tex. Aug. 23, 2017) (*citing Davis*, 526 U.S. at 646). Circumstantial evidence, such as the time of day the texts were sent, the students referenced in the text messages, and the type of knowledge the texting person possessed, suggests with sufficient plausibility to survive KISD's Motion that the person was a KISD student acting during school hours and on school grounds. ECF No. 19 at 4. Accordingly, Bichel has met this element of the student-on-student harassment standard.

As with the jazz band harassment, the texting harassment was based on Bichel's sex. Taking the pleaded facts as true, the harassing person called Bichel "'cu\*\*,' 'sl\*\*,' 'wh\*\*\*,' 'bi\*\*\*,' and 'h\*\*.'" Case law confirms that many of these words are gender-related. *See Tipping v. Martin*, No. 3:15-cv-2951-BN, 2016 WL 397088, at *4 (N.D. Tex. Feb. 2, 2016) ("The common usage or meaning of the words 'wh\*\*\*,' 'cu\*\*,' and 'sl\*\*' may impute unchastity to a female…"); *Francis v. Prof'l Compounding Centers of Am., Inc.*, No. H-18-4485, 2020 WL 13613397, at *4 (S.D. Tex. Mar. 10, 2010) (the use of "cu\*\*" and "bi\*\*\*" created a fact issue for trial in a Title

VII case on whether the work environment was hostile based on sex); *but see Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 434 (5th Cir. 1995) (repeated use of "cu**" may be discriminatory, but single use of the term "years prior to the challenged conduct[ ] is a stray remark too remote in time to support an inference of sex discrimination in later employment actions.").

The fourth element, whether the harassment was "so severe, pervasive, and objectively offensive that it effectively bar[red] the victim's access to an educational opportunity or benefit," *Sanches*, 647 F.3d at 170, is also not met for the texting incident. The texting appears to have occurred on one day, and the severity of the words used was roughly comparable to the severity of the jazz band harassment, although the person who texted her called Bichel two additional objectively offensive terms: "cu**" and "sl**." ECF No. 19 at 4. This harassment was not physically threatening, but it could be considered humiliating because it "made [Bichel] believe bad things about herself, broke her self-confidence, and made her feel terrible about herself." *Id*. As for whether this harassment unreasonably interfered with the educational environment, Bichel alleges that she "struggled to focus on her schoolwork." *Id*. at 5. Bichel has not otherwise explained how the texting incident deprived her of an educational opportunity or benefit. Taken together, these factors suggest that the harassment in the texting incident was not sufficiently severe, pervasive, and objectively offensive to be actionable under Title IX.

Finally, as explained above, the Court finds that Bichel has not pleaded facts to show that KISD's response to the texting incident was clearly unreasonable, particularly given that there was a "protracted investigation." Therefore, Bichel cannot prevail on a student-on-student harassment theory for either the jazz band harassment or the texting incident.

**2.      She has not pleaded a plausible case for discrimination during the harassment investigation.**

Alternately, as explained above, Bichel appears to claim that KISD treated her differently due to her gender during the sexual harassment investigation process, violating Title IX. *See* ECF No. 19 at 7, 9, 10. But "[u]nder Title IX, schools are liable only for *intentional* sex discrimination." *Poloceno v. Dall. Indep. Sch. Dist.*, 826 F. App'x 359, 362 (5th Cir. 2020) (emphasis in original). However, Bichel has not pleaded any facts to support a claim that KISD treated her differently during its investigation because of her sex, much less that it did so intentionally. Therefore, this alternate theory of Title IX liability fails.

**3.      She is not entitled to a declaration that Devlin violated her rights.**

Bichel seeks a declaration under the Texas Declaratory Judgment Act ("TDJA") that Devlin violated her rights, but the Texas Declaratory Judgment Act does not apply in this Court because it is procedural, not substantive. *Self-Ins. Inst. of Am. v. Korioth*, 53 F.3d 694, 697 (5th Cir. 1995) (holding that the TDJA is inapplicable in federal question cases in federal court). However, when plaintiffs seek declaratory relief in federal court under the TDJA, courts sometimes consider whether relief under the Declaratory Judgment Act, 28 U.S.C.A. § 2201 ("DJA"), would be warranted. *See Vera v. Bank of Am., N.A.*, 569 F. App'x 349, 352 n.5 (5th Cir. 2014); *Flanagan v. Chesapeake Expl., LLC*, No. 3:15- CV-0222-B, 2015 WL 6736648, at *4 n.3 (N.D. Tex. Nov. 4, 2015). The Court does so here.

Under the DJA, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). "The purpose of the [DJA] is to settle actual controversies before they ripen into violations of law or breach of some contractual duty." *Braidwood Mgmt., Inc. v. Equal Emp't Opportunity Comm'n*, 70 F.4th 914, 926 (5th Cir. 2023) (cleaned up). "[W]hen a plaintiff asks for

19

declaratory relief, the court must assess whether an actual or immediate controversy exists between the parties or whether, instead, the controversy remains abstract and hypothetical." *Id.* at 930. Furthermore, "[d]eclaratory relief is a matter of district court discretion." *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1992).

"The federal [DJA] does not create an independent cause of action that would confer jurisdiction on the district court." *Doe v. Prosper Indep. Sch. Dist.*, No. 4:22-CV-00814, 2024 WL 1329917, at *15 (E.D. Tex. Mar. 27, 2024) (cleaned up). "Rather, it is the underlying cause of action that is actually litigated in a declaratory judgment action." *Id.* "If a plaintiff's underlying, substantive claims fail to state a cause of action upon which relief can be granted, the plaintiff cannot prevail on a claim for declaratory judgment." *Id.*

Accordingly, even if Bichel had brought an action under the DJA, declaratory judgment would not be available because she has not adequately pleaded her constitutional or Title IX causes of action. Bichel cites cases such as *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 269 (Tex. 2021) and *City of El Paso v. Heinrich*, 284 S.W.3d 366, 371-372 (Tex. 2009) in support of her claim. ECF No. 19 at 7-9. However, state court references to sovereign immunity and to declaratory judgment concerning an insurance contract do not change the fact that Bichel is not entitled to declaratory relief under the DJA when her substantive claims are unavailing.

### 4.      The Court does not grant Bichel leave to amend her Second Amended Complaint.

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Bichel already has amended her complaint twice, the second of which was in response to

deficiencies noted by the Court in its previous opinion. ECF Nos. 3, 18, 20. This suggests that Bichel already has pleaded her best case, and any further attempts to amend would be futile. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Therefore, the Court dismisses her case without leave to amend.

## IV.    CONCLUSION

Bichel has not alleged facts sufficient to state a claim under the Constitution and under Title IX. She also has not successfully pleaded facts to show that Devlin is not entitled to qualified immunity from her claims or that KISD is liable on a municipal liability theory. Therefore, the Court **GRANTS** Defendant Kennedale Independent School District's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 20).

It is so **ORDERED** on April 24, 2024.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE